UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANET TRAWICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 24-cv-7481 ) |
| | ) Judge April M. Perry |
| NETCREDIT LOAN SERVICES, LLC, | ) ) |
| Defendant. | ) ) ) |

**OPINION AND ORDER**

In many U.S. states, usury laws cap the interest rate lenders can charge on consumer loans. One of those states is Indiana, which imposes through the Indiana Uniform Consumer Credit Code ("IUCCC") a ceiling on the interest rate that can be attached to certain types of consumer loans. *See* Ind. Code § 24-4.5-3-201. Anticipating lenders might attempt to bypass the IUCCC through contractual waivers in loan documents or by other means, the IUCCC makes the protections of the IUCCC unwaivable, Ind. Code § 24-4.5-1-107, and expressly invalidates agreements between creditors and consumers calling for the laws of other states to apply to such loans. Ind. Code. § 24-4.5-1-201(6).

Plaintiff Janet Trawick is an Indiana resident. In May 2022, Plaintiff acquired online a loan from Defendant NetCredit Loan Services, LLC ("NetCredit") with an interest rate of 64.75 percent. Believing the interest rate on her loan exceeded the lawful limit under the IUCCC, Plaintiff brought this proposed class action against NetCredit, seeking monetary damages.

Plaintiff's loan agreement contained a governing law provision calling for Kentucky law to apply, as well as a binding arbitration provision. Defendant now moves to compel arbitration based on the arbitration clause. Plaintiff argues the clause is unenforceable because of the

Kentucky choice-of-law provision, which—if followed by the arbitrator—would deprive Plaintiff of the right to invoke the protections of the IUCCC. Having considered the parties' arguments, Defendant's motion is granted for the reasons set forth below.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A dispute must be sent to arbitration if (1) the parties formed a valid, written agreement to arbitrate; (2) the dispute falls within the scope of that agreement, and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). If the enforceability of an agreement to arbitrate is challenged, the party opposing arbitration bears the burden of demonstrating that the arbitration agreement is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Once it is determined that parties formed an agreement to arbitrate, courts may presumptively resolve challenges aimed at the validity, enforceability, and scope of that agreement. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986). No presumption need apply here, though, because the arbitration agreement provides that "any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof … are for a court and not an arbitrator to decide." Doc. 1-1 at 15.

## ANALYSIS

Plaintiff does not dispute the existence of an agreement to arbitrate or that her substantive claims fall within its scope. Instead, she invokes the doctrine of prospective waiver to argue that the arbitration agreement is unenforceable. Specifically, Plaintiff argues that the arbitration agreement compels the arbitrator to apply Kentucky law, thus depriving Plaintiff of any

2

opportunity to invoke her unwaivable rights under the IUCCC. For the same reason, Plaintiff also contends the arbitration agreement is unconscionable. Defendants argue that this misreads the contract, and that in any event, Plaintiff's arguments should be heard by the arbitrator, not the Court, because her concerns regarding the governing law provision relate to the entire contract, rather than the arbitration agreement specifically.

The Court starts with the threshold question of whether it may consider Plaintiff's prospective waiver argument, or instead whether the FAA requires that the arbitrator hear Plaintiff's challenge. Defendants urge the latter, citing *Henry Schein, Inc. v. Archer & White Sales, Inc.* for the principle that courts "may not decide a merits question that the parties have delegated to an arbitrator." 586 U.S. 63, 69 (2019); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (an "arbitration provision is severable from the remainder of the contract" and so "unless the challenge is to the arbitration clause itself, the issue of the [overarching] contract's validity is considered by the arbitrator in the first instance."). While some of Plaintiff's arguments could be broadened into attacks on the enforceability of the entire loan agreement, Plaintiff's current argument is that the arbitration clause cannot be enforced because the governing law provision requires the arbitrator to apply Kentucky law and thus prevents Plaintiff from asserting her rights under Indiana law. This argument is directed to the arbitration clause because it concerns a perceived defect with the arbitral forum. Thus, the prospective waiver argument may be heard by this Court.

Under the prospective waiver doctrine, an arbitration agreement is unenforceable if the rules and procedures applicable in the arbitral forum prevent a party from vindicating her statutory remedies. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637

(1985).[1] For example, a "provision in an arbitration agreement forbidding the assertion of certain statutory rights" runs afoul of the doctrine. *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013). Another example would be a choice-of-law provision that requires an arbitrator to resolve disputes under the laws of a jurisdiction that would foreclose any opportunity for the party resisting arbitration to vindicate her statutory rights. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539 (1995), citing *Mitsubishi Motors*, 473 U.S. at 637 n. 19.

In recent years, courts in this district and elsewhere have applied the prospective waiver doctrine to invalidate agreements requiring parties to arbitrate their disputes under tribal law, on the ground that this requirement prevented the "effective vindication of federal statutory protections and remedies." *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 344 (4th Cir. 2020); *see also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 240–41 (3d Cir. 2020) (arbitration agreement effected "an impermissible prospective waiver of statutory rights" where it mandated tribal law apply, not federal); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) (requirement that arbitrator apply only tribal law, not state or federal law, rendered arbitration agreement unenforceable); *Fahy v. Minto Dev. Corp.*, 722 F.Supp.3d 784, 802 (N.D. Ill. 2024) (same); *Harris v. FSST Mgmt. Servs., LLC*, 686 F.Supp.3d 734, 742 (N.D. Ill. 2023) (same). In every one of these cases, courts interpreted specific provisions of the arbitration agreements and broader contracts in which they appeared as mandating that the arbitrator apply tribal law, to the exclusion of federal or state law.

---

[1] The Court notes that the question of whether prospective waiver doctrine applies to substantive rights arising from state law is currently pending before the Seventh Circuit. *See Harris v. W6LS, Inc.*, No. 24-2056 (7th Cir. argued Feb. 12, 2025). But whatever the Seventh Circuit decides, it will not affect the ultimate disposition in this case because the Court concludes that the arbitration agreement here does not prospectively waive any substantive rights, state or federal.

Plaintiff urges this Court to invalidate her arbitration agreement with NetCredit along similar lines because, as she reads it, the loan agreement's governing law clause—which she contends the arbitrator must follow—deprives her of substantive rights under Indiana law. But the Court does not read the contract so broadly.

In relevant part, the loan agreement's governing law provision states that "this Agreement (other than the Arbitration Provision) and all related disputes are governed by applicable federal law and the laws of the Commonwealth of Kentucky, without regard to its conflict of law provisions." Doc. 1-1 at 11. Later, the arbitration clause itself provides that "[i]n determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the FAA, which would apply if the matter had been brought in court." *Id*. at 17. Reading these provisions in harmony, *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (contracts should be interpreting to harmonize all provisions), the Court concludes that the latter provision (and not the former) controls what law the arbitrator is required to apply.

The question for the Court, then, is what substantive law this clause requires the arbitrator to apply. Plaintiff asserts that the loan agreement's choice-of-law provision will force the arbitrator to apply Kentucky law. But this is not the only possible result, and perhaps not even the most likely one. "The selection of one state's substantive law over another in the event of a conflict presents a question of law" that must be decided by the court or, if agreed to by the parties, an arbitrator. *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 736–37 (7th Cir. 2008). Different jurisdictions apply different analytical frameworks to resolve choice-of-law questions, with Indiana (where Plaintiff resides), Illinois (Defendant's principal place of business), and federal courts all drawing from the choice-of-law principles outlined in the Restatement (Second) of

5

Conflict of Laws.[2] *See, e.g.*, *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815–16 (Ind. 2010). Under the Restatement approach, choice-of-law clauses in contracts are not automatically enforced and may be invalidated when the contractually selected state lacks any substantial relationship to the parties or transaction or where enforcing the choice-of-law provision would contravene the fundamental policy of the state with a material interest in the dispute. *See, e.g.*, *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) ("Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy."); *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990) (refusing to enforce contractual choice-of-law provision as "contrary to Indiana's express public policy"); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. g (1971) (discussing protection of state's fundamental policy as basis not to enforce contractual choice-of-law clause and noting that "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect against the oppressive use of superior bargaining power"). Plaintiff offers no interpretation of the arbitration clause that would preclude the arbitrator from conducting a choice of law analysis, and thereafter refusing to enforce the portion of the loan agreement calling for Kentucky law to be applied.

---

[2] For good measure, Kentucky also applies the Restatement approach, *see State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013), but the governing law clause in Trawick's loan agreement specifically commands for disputes to be governed by "applicable federal law and the laws of the Commonwealth of Kentucky, *without regard to* its conflict of law provisions." Doc. 1-1 at 11 (emphasis added).

6

To be sure, the Court does not know what choice-of-law determination the arbitrator will make. But it is well-settled that this type of question should be resolved by the arbitrator in the first instance. *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995) (choice-of-law "must be decided in the first instance by the arbitrator"), citing *Mitsubishi Motors*, 437 U.S. at 637, n. 19. Where an arbitration agreement leaves open "what law the arbitrators will apply to [Plaintiff's] claims or [whether she] will receive diminished protection as a result," it is proper to have the arbitrator consider challenges to the broader contract's validity based on its choice-of-law and other provisions. *Vimar Seguros*, 515 U.S. at 540.

The key problem with Plaintiff's argument is the assumption that if an unwaivable substantive statutory right is ostensibly waived in a contract, that right cannot be vindicated in arbitration. But "[a]n arbitration agreement … does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). Certainly, Plaintiff raises meaningful concerns regarding how her loan agreement's governing law provision might interact with the IUCCC. But she falls short of persuading this Court that the arbitral forum is less equipped than a court to consider these issues or that the parties have placed any limits on how the arbitrator does so. Indeed, the loan agreement in this case explicitly dictates that the arbitrator must apply "the applicable substantive law … which would apply if the matter had been brought in court," Doc. 1-1 at 17, which makes clear that the arbitrator should undertake the same conflict-of-law analysis as the court would have.

What does Plaintiff fear then, really? Perhaps simply that the arbitrator may get it "wrong," and uphold the legality of Plaintiff's allegedly usurious loan agreement, thus

7

effectuating a waiver of her unwaivable IUCCC rights. But the Court finds that this concern is unavailing in light of *Vimar Seguros*. In that case, the Supreme Court permitted a dispute to go to foreign arbitration—despite uncertainty about whether the arbitrator would enforce protections guaranteed by U.S. law—based in part on the availability of a "subsequent opportunity for [judicial] review" of the foreign arbitral award "to ensure that the legitimate interest in the enforcement of the … laws has been addressed." *Vimar Seguros*, 515 U.S. at 540, citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 482(2)(d) (1986). *Vimar Seguros* is distinguishable from this case in that awards issued by foreign powers are not guaranteed recognition by default and U.S. courts may choose not to recognize them on various grounds. *See Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696–97 (7th Cir. 2009). In contrast, the FAA tightly constrains the permissible grounds for federal courts to vacate arbitral awards to a delineated list, which focuses more on "procedural protections rather than ensuring the correct outcome." *Zimmer Biomet Holdings, Inc., v. Insall*, 108 F.4th 512, 516 (7th Cir. 2024), citing 9 U.S.C. § 10(a). Nonetheless, meaningful judicial review remains possible, as courts may refuse to enforce an arbitral award that "violates positive law" or offends "explicit" and "well defined" public policy ascertainable "by reference to the laws and legal precedents." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist.* 17, 531 U.S. 57, 62–63 (2000); *see also Zimmer*, 108 F.4th at 516–17. That issue is not yet before the Court (and might never be), but suffice to say, if Plaintiff is correct that the IUCCC's protections cannot be waived, there would be an opportunity to challenge the validity of an arbitral award as having effectuated an unlawful waiver of those rights.[3]

---

[3] Plaintiff also asserts that because the IUCCC prohibits agreements to apply the law of another state to a loan subject to its regulation, *see* Ind. Code. § 24-4.5-1-201(6), the arbitration agreement is unenforceable

8

## CONCLUSION

For the foregoing reasons, the Court finds that nothing in the arbitration agreement forecloses Plaintiff from vindicating her substantive rights under the IUCCC in arbitration. Accordingly, the arbitration agreement does not violate the prospective waiver doctrine. Similarly, the Court rejects Plaintiff's argument that the arbitration agreement is unconscionable, as this argument is simply the prospective waiver argument repackaged. Defendant's motion to compel arbitration is granted, and the litigation stayed pursuant to 9 U.S.C. § 3.

Dated: August 22, 2025

APRIL M. PERRY
United States District Judge

---

and even "allowing consideration" of another state's law violates Indiana law. Doc. 22 at 14. Plaintiff cites no case law to support this interpretation of the IUCCC, and the Court does not agree that Indiana intended to prevent either a court or arbitrator from conducting a choice-of-law analysis. It could be that this provision of Indiana law causes some or all of the loan agreement to be void, but agreements to arbitrate may be enforced even when appearing in a "contract that the arbitrator later finds to be void." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006).